Case number 245656, United States of America versus Benjamin Carpenter. Oral argument not to exceed 15 minutes per side. Mr. Davies for the appellate. Good morning. Good morning. May it please the court. My name is Wade Davies from Knoxville, Tennessee. And Georgia Miller and I represent the appellant Benjamin Carpenter. And I'd like to reserve five minutes for rebuttal. Mr. Carpenter is a 35-year-old man from Knoxville, Tennessee, who appeals his conviction for attempting to provide material support to a foreign terrorist organization under 2339B. Mr. Carpenter ran, essentially, an online discussion group on the platform Telegram. It was called ATP. And in doing so, Mr. Carpenter interacted with a person who, it turns out, was an undercover operative with the FBI who elicited Mr. Carpenter's aid in translating and editing a transcript of a video that purportedly was created by ISIS. So that formed the basis of his conviction. Mr. Carpenter initially represented himself at the motion stages. And as soon as he was arrested, he started asking, how am I charged under that statute? So he did an excellent job with his motions on notice and vagueness. Because under the statute, there are a number of different ways that are included that can violate this material support statute. And some of those have very clear requirements that the government has to prove beyond a reasonable doubt. Mr. Carpenter took the position from the very beginning that if the government was going to prosecute him under any of those subsections, for example, personnel or providing expert advice or assistance, that the government should have to identify. Or any service. Right. So the statute says it means any property, tangible or intangible, or service, and then including. And then it lists those matters that are including. So what Mr. Carpenter was saying is that, I mean, including is not an exhaustive term. So those are just a bunch of examples, right? And one of them is expert advice, which is not that far afield from translation. It's not. And I think that's what Mr. Carpenter was saying all along. That if the government is prosecuting me for providing expert assistance, then it should have to identify that and meet the elements of the expertise prong. Because it has a definition in the statute, which means it's advice or assistance derived from scientific, technical, or other specialized knowledge. Well, maybe I'm not following your point. The reference to expert advice doesn't prove that's exactly what he was prosecuted of. It proves that the list, which is not exhaustive, includes things that are not that far afield from translation services. And the key problem is that he's prosecuted under the any service prong. And they proved that he provided a service translation. That's the trick, right? I think what he has said all along, and this makes sense under the statute, is the government identified in the pretrial pleadings that he could come within this expert advice or assistance prong. And if that is the case, then the government should have had to plead and prove that he used assistance derived from scientific, technical, or other specialized knowledge. And the jury should have been instructed that they had to find that. Because, and that's a very real problem in this case. Because Mr. Carpenter. I think the key word in the sentences you've just said was could. So there's debate about the possibility that the government could have tried him under the expert advice thing. The question is whether they did. And the answer to that, under the jury instructions, is they did not. Right. Because there's other language, which has the language any service. But they tried the case, including the theory that he did provide translation services. And they referred to it as expertise. And they weren't required. And the jury wasn't instructed that they had to prove that there was advice or assistance derived from scientific, technical, or other specialized knowledge. And the reason that's really important in this case is that Mr. Carpenter was not an Arabic expert. He was self-taught. He learned it totally on his own. And so we had an argument with materiality that the services that were provided wouldn't have satisfied the statutory definition. Let me rewind a little bit and forgive me for my ignorance. Was there a debate at the jury instruction phase where you all said, now listen, you're being a little vague here. You're talking about any service at one point. You're talking expert advice at other times. Let's work through this. And we don't think you can have an instruction that just refers to any service. Did you guys argue that? Yeah. And Mr. Carpenter began that really as soon as he got indicted. The jury instruction conference, he had counsel, right? Yes, I was his counsel. OK, so I'm not interested in the, that's behind us, OK? We're at the jury instruction conference. You said to the court what about the instruction? I filed a written request for instructions. It's document 155. And I asked for the definitions to be read to the jury. And also, by that time, though, the court had already said. Am I wrong in remembering that the elements potentially included just any service? And the question whether this was a covered service? Well, that is what the court, that's what the government said. And what the court ruled. The instructions, they say what they say. Right. It must have said any service. It did. OK. And you objected to that? Yes. And said, no, no, no, no, that's not right. It has to be any service, which here is only expert advice. Is that the one? No. What was your argument? No, I asked for the terminology from the statute to be defined and read to the jury. And I submitted a detailed response. But at that time, also, the court had already ruled that the government didn't have to proceed. Just so you understand, I just want to make sure you understand my questions. I didn't think this was a jury instruction case. I thought this was a sufficiency issue. It's not a sufficiency of the evidence case. It is not. It's notice and vagueness. I know you have a vagueness argument. But I didn't realize it was a jury instruction argument. Where the jury instructions come in is that the court allowed the government to proceed with a theory that Mr. Carpenter essentially had provided expert advice or assistance without the government being required to prove those elements beyond a reasonable doubt through the instructions. Your word in your sentence was essentially. Right. Well, they did say that he used expertise. Right. And so my point on that is that if they are going to use this prong of the statute, they should have to prove beyond a reasonable doubt the element. And the jury should have been so instructed. We would find, I presume, whatever you said on this point, the colloquy about the jury instructions. Is that correct? Well, I think it would start much earlier than just the jury instructions because. Tell us where we should look at the transcript. I think he wants to go to what his client was saying before he had counsel. Right. Because the court had already said that. Long before the jury instruction conference. Right. And the court had already said that the government didn't have to identify expert advice or assistance. So the court wasn't going to instruct on those exact elements by that time. Just before we finish on this point, what's the very best case you have? Just we'll make sure we look at it. In addition to the colloquy, what's the very best case that shows the judge botched it? So there are a number of cases. Just one. The very best case that shows the judge botched it on this point of not spelling out service. Probably a district court case called A1 that I've cited, which is just where it was initially held to be insufficient and they re-indicted using the specific terminology. Great. All right. Well, you'll get your full rebuttal and we'll hear from the government. Thank you.  Morning. Morning, Your Honors. May it please the court. Joseph Minta on behalf of the United States. It would be helpful. Let's just keep the focus on this one issue. That's what we need to hear from you on. So what do you have to say about it? Absolutely, Your Honor. Carpenter was properly charged with violating section 2339B. His claim on this point has evolved a little bit over time. I came into this case also not understanding it as a jury instruction argument, but rather a challenge to either the vagueness of the statute or the notice given in the indictment. And A1 addresses that earlier point. A1 was a case about whether an indictment had given a defendant sufficient notice about the type of material support that they had provided. In A1, the district court dismissed an indictment that purely alleged that the defendant provided any property or service. And the government then re-indicted specifying the type of services that the defendant provided. That's exactly what happened here as well. Initially, the indictment charged Mr. Carpenter with providing any service. And after he raised his motion to dismiss, we re-indicted specifying that the services were translation services. So this is fully consistent with what happened in A1. And I don't think that A1 undercuts the argument that the indictment here gave him sufficient notice. I do want to turn briefly to the jury instructions in case that's how his argument is now being evaluated. Before you go into that, can we resolve this issue just based on Holder versus Humanitarian Project Supreme Court case on definition of service? Can that case just resolve this entire point? I think that it does to the extent he's challenging either the vagueness of the statute or the interpretation of the statute and whether the list is exhaustive. The service that the Supreme Court considered, among other things, in Humanitarian Law Project was advocacy, which is not one of the listed items that follows the including language that Judge Sutton flagged. And so just as advocacy can qualify as any service, translation services can qualify as any service. And that's exactly what this court said in Hendricks as well, that any service qualifies as providing material support and that the statute isn't limited, as Holder illustrates, and I think your question gets to, to purely the terms that follow the word including. And that's consistent with the plain language meaning of including as well. So I do think that to the extent he's arguing that the statute is limited to those particular examples, Holder does foreclose that argument. And it also forecloses his argument that the term any service is unconstitutionally vague, which I think brings us back to the only other variation of this argument until today that I had seen was whether or not the indictment gave him sufficient notice. And once we re-indicted to specify that the service here was translation services, that requirement was also met. So any of those three variations of the argument, I think, are easily resolved either by appeal to Holder and this court's decision in Hendricks or by the government's greater specificity in the superseding indictment. But I did want to turn briefly to the jury instructions. I just have to say one thing that's quite antiquated about this in our fast-moving world. I mean, very funny to think of this as a material service now when you have computers that would just translate automatically. I think that's right. I think that actually illustrates the way that Carpenter provided a service here in that what he wasn't charged with was translating. And I think that might get slightly closer to your expert advice question. What he was charged with here was more of a headhunting or a matchmaking kind of service. He took an individual asking for translation assistance and connected them with people in his organization who could provide that assistance. He had built this organization up in order to provide these kinds of services. And he had collected a group of people that were willing to do so. And so when the OCE came to him and said, we need help with this, he passed it along to somebody who was qualified. Could he have been charged if he said, I've got this awesome app? Could he have been charged? In other words, it's a weird form of headhunting. He's just getting the actual computer program. He could have been charged for that? Potentially, Your Honor. There was expert witnesses on both sides testifying about the quality of the translation that he ultimately provided. If this was a garbled Google Translate that he had provided as opposed to a quality translation that was done in a way to actually target the type of people that would watch these videos, the government's expert on this point explained how the language that you choose when you're translating from Arabic to English, it's not a sort of one-to-one correspondence. Sometimes you want to keep the original Arabic term because it has additional connotations. And that those are difficult decisions that a translator must make. So I don't know the quality of Google Translate at this point and whether it would be cognizant of, if this is ISIS propaganda, we need to leave in certain terms that ISIS considers having particular meanings as opposed to moving them into English. I think that that would get to the question of whether it rises to the level of material support, which I think was your question about a simple app translation. But that wasn't what the government proved here. The government, through its expert, explained why this was a very high-quality translation that would have been beneficial to ISIS had it not actually been requested by an undercover. But I do, again, want to get back to the jury instruction just to clarify the record on this point a little bit. What Mr. Carpenter asked in the jury instructions was that, in addition to laying out the definition of material support and including language, he asked for the additional subsections of the statute to be read to the jury that further define training and expert advice and assistance. So that request was made. But as you pointed out, those terms were not how he was charged. And so the district court appropriately rejected that instruction, because that would have just confused the jury as to whether it was supposed to be evaluating these prongs or not. And he was, in fact, charged with any service, which, as we've talked about, can include things beyond the items that are listed after the word included. That's all that I had on the statutory interpretation argument. I know, sir? I think we understand your argument. Thank you very much. Certainly, Your Honor. If there are no other questions on his other issues, we would urge the court to affirm. Thank you. All right, we'll hear your rebuttal. And if you could keep the focus on the statute, that would be both good and fair. Thank you. I'd like to address the question about the Holder decision also, because I think that's extremely important here. In the Holder, the Supreme Court definitely did not address the issue of whether any service, no matter how small it was or what it was, would be constitutionally sufficient. What the court did in Holder was to address the specific things the plaintiffs, in that case, wanted to do. The court went through very carefully and looked at the 2004 amendments and said, the reason that this is not unconstitutionally vague here is because Congress has been very careful with these amendments to very carefully define the elements that would have to be proven. So that's why. Remind me, and forgive me for getting this, but in Holder, the charge was about advocacy. And which part of the statute was treated as advocacy? Was that service, or what was the? I think they were looking at service with advocacy. So here's my question. Isn't advocacy more vague than translation services? I would think it's like an a fortiori case. I don't think so, because what the government is saying here is not just translation. They say that it's any service, so any service, so anything that Mr. Carpenter could have done. And I think one of the things to look at, the reason this is important here, is the jury was confused by this, because they specifically ask a question, can he be convicted of something other than translation? And they asked for a definition of translation, which the court then declined over my objection. So the theory here by the government is that any service would satisfy the statute. And Holder doesn't address that. I think it clarified that it was a translation service. Right, but the court did not define what translation was The court didn't really answer the jury's question, but it does show that that was something that the request that Mr. Carpenter made ended up being very significant to the jury, because they were confused about what they could convict on. And then in Holder, the court said that the plaintiffs had identified a bunch of difficult questions about how much direction or coordination is necessary. And they said whether any communication would do it, or whether an employment or contractual relation was required, or whether contact through an intermediary, which is essentially what we have here with the undercover person, would be sufficient. And the court says those are entirely hypothetical. So Holder doesn't address the constitutionality of the statute as applied to an argument that any service whatsoever would satisfy the terms of the statute. The proof showed what Mr. Carpenter did was he received a transcript that had already been prepared, and he essentially texted it to someone else who texted it back to him. And then he forwarded it back. He sent him to translate it. The other person, right. So I think there is a real question for the jury about especially materiality here. And that is why just being instructed that any service could satisfy the terms of the statute renders it unconstitutionally vague as applied. And further with Holder, when the court had identified some of the things in the 2004 amendments that prevented the statute from being interpreted as unconstitutionally vague, which are the elements that Mr. Carpenter has been talking about since the very beginning, the court also denied our request to charge on those things about, for example, if someone worked independently to advance the goals and objectives, and the defendant can only be convicted if he attempted to provide advocacy in coordination with or at the direction of the FTO. So those were things that were cited in Holder as rendering the statute constitutional that we then asked for jury instructions on that the court denied. Thank you. Thanks to both of you for your helpful briefs and oral arguments. Mr. Davies, I see you're a court-appointed counsel. Thank you very much for your excellent service to your client. Thank you. I've enjoyed working on this case. I hope he does as well. Thank you very much. The case will be submitted.